UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JUSTIN CHRISTOPHER SMITH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Nos. 2:21-CV-090 |
| ) | 2:18-CR-086 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Before the Court is Justin Christopher Smith's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 83].[1] The United States has responded in opposition [Doc. 6], and Petitioner filed a reply [Doc. 8]. Petitioner also filed a notice of citation of additional relevant authority [Doc. 7], which the Court liberally construes as a motion to amend; a motion to hold case in abeyance [Doc. 9]; and a motion to lift stay [Doc. 11] which are pending before this Court. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 83] will be **DENIED**, his motion to amend [Doc. 7] will be **GRANTED** to the extent that the Court will consider the information therein, and his motions to hold case in abeyance [Doc. 9] and to lift stay [Doc. 11] will be **DENIED as MOOT**.

I.  BACKGROUND

---
[1] Document numbers not otherwise specified refer to the civil docket.

In June 2018, Petitioner was indicted on one count of being a felon in possession of a firearm in a Superseding Indictment. [Crim. Doc. 1]. The Indictment was superseded in August 2019, to comply with the new standards as set forth in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and to add a count for knowingly possessing a firearm while being an unlawful user of a controlled substance in violation of 21 U.S.C. § 802. [Crim. Doc. 54]. Petitioner, through counsel, filed a suppression motion. [Crim. Doc. 31]. However, before the hearing could take place, Petitioner chose to enter into a plea agreement. On November 26, 2018, Petitioner agreed to plead guilty to one count of being a felon in possession of a firearm in violation of U.S.C. § 922(g)(1). [Crim. Doc. 36]. The Plea Agreement also contained a Rule 11(c)(1)(C) agreed sentence of 180 months, the statutory minimum sentence. The Plea Agreement was signed by Petitioner and attorney Joseph O. McAfee ("Attorney McAfee"). [*Id.*] A later Amended Plea Agreement was filed to comply with the new standards as set forth in *Rehaif*, 139 S. Ct. 2191 and included the same Rule 11(c)(1)(C) agreed sentence. [Crim. Doc. 54].

In his Amended Plea Agreement, Petitioner acknowledged that on or about March 31, 2017, Greeneville police responded to a report of two males passed out in a vehicle. Petitioner was in the passenger's seat of the vehicle an appeared to the officer to be under the influence of a controlled substance. Petitioner was arrested and charged with public intoxication. When the officer searched the car, which was rented to Petitioner, he discovered a firearm in the passenger side floorboard where Petitioner had been sitting. Petitioner also claimed ownership of a plastic bag containing ammunition for the firearm found in the back of the vehicle. The officer also discovered Suboxone tablets and other

drug paraphernalia. Petitioner also admitted to knowing that he had previously been convicted of a felony when he possessed the firearm. [*Id*. at 2-3].

The Court conducted a change of plea hearing on November 28, 2018. Although there is no transcript of that hearing in the record, the Court recalls conducted its standard colloquy specifically advising Petitioner of his rights, grating his motion to change his plea to guilty, and referring Petitioner for a Presentence Investigative Report ("PSR").[2] After the Superseding Indictment and the Amended Plea Agreement, the Court conducted another change of plea hearing directly prior to sentencing. The transcript of that hearing reflects that the Court conducted is standard colloquy again specifically advising Petitioner of his rights, confirming that Petitioner was pleading guilty to Count One of the Superseding Indictment, confirming that the Government moved to dismiss the remaining count at sentencing, and finding Petitioner competent to make a knowing and voluntary plea. [Crim. Doc 74].

The PSR calculated a total offense level of 30 and a criminal history category of VI, resulting in a guideline range of 168 to 210 months. [Crim. Doc. 41, ¶ 87]. However, the statutorily authorized sentence of 15 years was greater than the minimum of the guideline range, so the guidelines range was effectively 180 to 210 months. [*Id*.]

The Government filed a notice of no objections to the PSR. [Crim. Doc. 42]. The Government also filed sentencing memorandum wherein it concurred that the correct

---

[2] Where, as here, the same judge considering the § 2255 motion also presided over the underlying proceedings, the judge may rely on his recollections of those proceedings. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

3

advisory guideline calculation was 180 to 210 months and requested the Court accept the Parties' Rule 11(c)(1)(C) sentence of 180 months. [Crim Doc. 44].

Petitioner, through counsel, filed objections to the PSR, objecting to: 1) the application of the Armed Career Criminal Act ("the ACCA"); 2) the finding that two of Petitioner's prior convictions qualified as separate predicate offenses under the ACCA since they were not committed on different occasions; 3) the determination that the minimum term of imprisonment was 15 years and the maximum was Life due to the determination that the ACCA applies; and 4) the offense level associated with the ACCA determination. [Crim. Doc. 45]. Petitioner, through counsel, filed a sentencing memorandum, requesting the Court grant his objections to the ACCA or, alternatively, approve the Rule 11(c)(1)(C) agreed sentence. [Crim. Doc. 46]. On May 29, 2019, after considering the briefs by the parties and the applicable law, the Court overruled Petitioner's objections to the PSR with a memorandum and order. [Crim. Doc. 50].

On August 27, 2019, the Court approved the Rule 11(c)(1)(C) agreed sentence and sentenced Petitioner to a total of 180 months' imprisonment and then five years of supervised release. [Crim. Doc. 64]. Petitioner filed a direct appeal on September 1, 2019. On June 12, 2020, the Sixth Circuit Court of Appeals granted the Government's motion to dismiss the appeal, finding that Petitioner had waived his right to appeal his sentence if it was predicated on his armed career criminal classification. [Crim. Doc. 75]. Petitioner did not file a petition for writ of certiorari to the Supreme Court, but on June 3, 2021, he filed this timely § 2255 motion. [Doc. 1; Crim. Doc. 83].

II.   STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). To obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A

5

motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. ANALYSIS

As an initial matter, Petitioner seems to raise five claims in this § 2255 motion: 1) ineffective assistance of counsel for nor adequately communicating with him about the consequences of pleading guilty as opposed to proceeding to trial, 2) ineffective assistance for not conducting an adequate and independent investigation, 3) ineffective assistance for not negotiating a more favorable plea agreement, 4) ineffective assistance for not properly challenging his armed career criminal classification, and 5) that the Court erred in determining that Petitioner was an armed career criminal. [Doc. 1; Crim. Doc. 83].

6

Petitioner has also filed two non-dispositive motions [Docs. 9 and 11] which are currently pending before the Court as well. The Court will first address Claim 5, then will address the ineffective assistance claims, Claims 1-4, together before finally addressing Petitioner's non-dispositive motions.

### A. Claim 5 – The Court Erred in Determining that Petitioner was an Armed Career Criminal

Petitioner has alleged that the Court erred in determining that the ACCA applied to his case because the underlying offenses were not two distinct offenses as they occurred at the same time. The United States responds that Petitioner waived his right to collaterally attack his sentence in the Plea Agreement, the underlying criminal offenses took place at different times because the resisting-with-violence offense occurred while Petitioner was being arrested for the robbery offense, and the Court did not rely on any non-approved *Shepard* document for its different-occasions analysis. [Doc. 6].

When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his sentence, he is precluded from bringing such claims. *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (citing to *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001). A waiver in a plea agreement is generally considered knowing and voluntary if a defendant testified that his guilty plea was not coerced and that he reviewed and understood the agreement terms. *Id*. An exception to the general rule exists if the collateral attack concerns the validity of the waiver itself. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). However, in situations where the § 2255 motion does not articulate a basis for attacking the validity of the waiver, the Sixth Circuit and lower courts within the Circuit

7

have upheld collateral attack waivers if the waivers were knowing and voluntary. *Watson v. United States*, 165 F.3d at 486, 489 (6th Cir. 1999); *United States v. Eversole*, No. 6:05-cr-34, 2010 WL 420067, at *2, n.3 (E.D. Ky. Feb. 1, 2010).

In this case, Petitioner signed a Plea Agreement containing the following waiver provision: "[t]he defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a §2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel." [Crim. Doc. 58, p. 7].

Petitioner does not challenge the validity of the actual waiver, suggest that he did not understand the waiver, or claim that he did not sign it voluntarily. Accordingly, because Petitioner is not attacking the validity of the plea itself, and because he expressly waived the right to collaterally attack his conviction except for claims of ineffective assistance of counsel and prosecutorial misconduct, Claim 5 is barred by the knowing and voluntary waiver contained in the binding Plea Agreement. *See Davila*, 258 F.3d at 451. Accordingly, Petitioner's Claim 5 will be **DENIED** as barred by his collateral attack waiver.

### B. Claims 1-4 – Ineffective Assistance of Counsel

As stated above, Petitioner's claim of ineffective assistance of counsel is not barred by his collateral attack waiver. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for

proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

    1. **Claim 1**

Petitioner first faults counsel for not communicating with him and failing to inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial. [Doc. 1; Crim. Doc. 83]. Petitioner makes a conclusory statement that lacks specific factual support for the allegation. As a result, the Court can reject this contention as insufficient to sustain the motion. *See Ushery v. United States*, No. 20-5292, 2020 U.S. App. LEXIS 21840, at *3–4 (6th Cir. July 14, 2020).

Petitioner alleges that counsel "did nothing but try to convince [Petitioner] to plead guilty from the very beginning…[Attorney] McAfee never discussed any strategy with [Petitioner], nor did he discuss the *correct* possible outcome of a trial." [Crim. Doc. 8, p. 3] (emphasis added). However, there is nothing in the record to suggest that Attorney McAfee's advice was incorrect. Nothing in the record suggests that there was insufficient evidence to convict Petitioner, nor is there any indication that evidence should have been suppressed which would have resulted in an acquittal at trial. Thus, counsel's indication that Petitioner would be unsuccessful at trial was the "correct possible outcome." Petitioner even states that counsel set his expectation incorrectly, falsely concluding that he would have been acquitted or received a lesser sentence after trial. Based on the charge, Petitioner was looking at a sentence of 15 years up to Life, and the Plea Agreement recommended a sentence of 15 years, the minimum sentence applicable in this case. Petitioner has not established that his counsel was constitutionally ineffective nor that he was prejudiced as a result.

Further, Petitioner's claim that counsel did not communicate with him is contradicted by the record and not credited. "Solemn declarations in open court carry a

10

strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). At his second change of plea hearing, Petitioner specifically expressed to the Court that he was satisfied with his attorney's representation, that Attorney McAfee had explained the terms of the plea agreement to him and explained the meaning of any words Petitioner did not understand. [Crim. Doc. 74, pp. 4-7]. Petitioner further stated that Attorney McAfee had advised him of the elements of the offenses charged that the Government would have had to prove beyond a reasonable doubt, and after that, stated that he still wished to plead guilty because he was, in fact, guilt of the crime charged. [*Id*.]. Accordingly, Petitioner is not entitled to relief as to Claim 1.

    2. **Claim 2**

Petitioner next makes a conclusory statement that his attorney did not conduct an adequate and independent pretrial investigation. [Doc. 1; Crim. Doc. 83]. This claim lacks specific factual support for the allegation as it fails to establish how counsel's alleged ineffectiveness prejudiced Petitioner in any way. Petitioner has not alleged what his attorney may have discovered through an investigation that would have affected the outcome of the proceeding. As a result, the Court can reject this contention as insufficient to sustain the motion. *See Ushery*, No. 20-5292 at *3–4. Petitioner, in his reply, says that if counsel had hired an independent investigator, "there is a reasonable probability that Smith would have proceeded to trial or benefitted with a significantly less harsh sentence." [Doc. 8, p. 5]. However, Petitioner still has not provided factual support to show what an

11

investigator would have found that would have made a difference to Petitioner's sentence or convinced him to proceed to trial as opposed to pleading guilty. Further, Petitioner's own evidence he has presented to the Court shows that Attorney McAfee did retain a private investigator in the case whose assistance ensured that Petitioner did not receive charges of obstruction or witness tampering. [Doc. 2, Ex. 2]. A defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes,* 463 U.S. 745, 751 (1983). Thus, Petitioner's decision to plead guilty rested with him, and him alone. Accordingly, as Petitioner has not established prejudice, he is not entitled to relief as to Claim 2.

### 3. Claim 3

Petitioner next faults counsel for not negotiating a more favorable plea agreement. [Doc. 1; Crim. Doc. 83]. Petitioner may believe that his counsel was constitutionally ineffective because he now thinks he could have secured a better deal if only his attorney had been a better negotiator. However, the law is well-settled that dissatisfaction with a plea deal does not rise to a showing of constitutionally ineffective counsel. *See,* e.g., *Hunter*, 160 F.3d at 1115 ("[W]hile [petitioner] may later have decided that he could have done better, his dissatisfaction does not rise to a showing of constitutionally ineffective counsel"); *United States v. Parker*, 609 F.3d 891, 895 (7th Cir. 2010) ("[W]hether a petitioner 'could have negotiated a better plea deal is irrelevant in the ineffective assistance context.'") (quoting *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006)).

Additionally, a criminal defendant has "no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The government was therefore under no obligation to offer an even more lenient plea. Petitioner does not show that he was innocent of the underlying charge or that his attorney failed to negotiate a plea bargain. On the contrary, the record indicates that not only did counsel negotiate a Plea Agreement for the minimum applicable sentence for Petitioner, but he also fought zealously for the exclusion of the ACCA to be applied to Petitioner and argued for a lower sentence because of it. [Crim. Docs. 45 & 46]. Thus, Petitioner has not shown any ineffective assistance of counsel that would have resulted in a different outcome.

Petitioner stated at his change of plea hearing that he understood the terms of the Plea Agreement, that he wished to plead guilty without promises or any coercion, and that he was pleading guilty because he was guilty of the criminal charge. [Crim. Doc. 74]. As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Petitioner's unsupported allegations that his attorney provided ineffective assistance for failing to negotiate a plea deal are directly contradicted by the record and are not credited. Accordingly, Petitioner is not entitled to relief as to Claim 3.

### 4. Claim 4

Finally, Petitioner faults counsel for not properly challenging the applicability of the ACCA to Petitioner's case. Petitioner's argument fails at *Strickland's* second step.

13

Petitioner's primary arguments for ineffective assistance of counsel are that his counsel did not contest the use of unapproved *Shepard* documents, did not submit Petitioner's letter to the Court before sentencing, nor did counsel properly argue "that resisting arrest with violence is not a violent felony under the use of force clause." [Doc. 2, pp. 22-32]. Petitioner's unsupported allegations are directly contradicted by the record and are not credited. *Blackledge*, 431 U.S. at 74.

Attorney McAfee filed an objection to the PSR, specifically objecting tot the ACCA being applied to Petitioner. [Crim. Doc. 45]. Attorney McAfee again made the argument that the ACCA should not apply in his sentencing memorandum. [Crim. Doc. 46]. Petitioner does not state what argument Attorney McAfee could have made that would have succeeded in finding that the ACCA did not apply to Petitioner. As the Court did not consider unapproved *Shepard* documents in determining that the ACCA applied, arguing that the Court used unapproved *Shepard* documents in its determination would have been frivolous. *See* [Crim. Doc. 50]. Counsel cannot be deemed ineffective for not raising frivolous arguments. *Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2003).

Similarly, Petitioner's argument regarding the use of force clause falls under the frivolous argument category. As Petitioner even stated, "the Eleventh Circuit has consistently ruled that resisting arrest under Fla. Stat. § 843.01 was an ACCA predicate." [Crim. Doc. 2, p. 26]. Counsel is not ineffective just because his arguments did not persuade the Court in Petitioner's favor. While Petitioner now raises alternative arguments in his memorandum of law, he does not show that those arguments would have resulted in a different outcome. Petitioner thus cannot bear his burden of showing "a reasonable

14

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Petitioner also faults counsel for failing to submit a letter Petitioner wrote to the Court. However, at his change of plea hearing, the Court inquired whether Petitioner understood the appellate rights he was giving up, and he did not ask for clarification from the Court, nor did he express any indication that he did not understand his appellate rights. *See* [Crim. Doc. 74]. Further, later that same day, at sentencing, Petitioner was given an opportunity at sentencing to allocate and speak to the Court directly. Petitioner did not read the letter himself, nor did he represent any of the issues set forth in the letter in open court. [*Id.*]. In the evidence submitted by Petitioner himself, Attorney McAfee indicated his hesitation in submitting the letter because it may have called into question Petitioner's acceptance of responsibility, jeopardizing his opportunity to receive the benefit of a Rule 11(c)(1)(C) plea agreement for the minimum sentence applicable in this case. [Doc. 2, Ex. 2]. However, even with the letter, Petitioner cannot show that he was prejudiced by its exclusion. The Court, under applicable law, determined that Petitioner was an armed career criminal under the ACCA. Petitioner's attorney negotiated a plea agreement for the lowest sentence permitted by law. Petitioner, consequently, received the lowest sentence permitted by law. Accordingly, Petitioner is not entitled to relief as to Claim 4.

Based on the above, Petitioner is not entitled to relief as to any of his 5 claims in the instant § 2255 motion. Accordingly, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 83] will be **DENIED**.

### C. Non-Dispositive Motions [Docs. 7, 9, and 11]

Petitioner has also filed several non-dispositive motions which are pending before this Court. First, Petitioner has filed a notice of citation of additional authority which the Court has liberally construed as a motion to amend. The Court finds the motion well-taken and will **GRANT** the motion to amend [Doc. 7], to the extent that the Court will consider the information contained therein.

Second, Petitioner has filed a motion to hold the case in abeyance [Doc. 9], requesting the Court hold the case in abeyance until after the United States Supreme Court issued its decision in *Wooden v. United States*, 142 S. Ct. 1063 (2022). As the Court has determined that Petitioner's claims are without merit and the Supreme Court has already issued its opinion, Petitioner's motion to hold the case in abeyance is moot. Accordingly, Petitioner's motion [Doc. 9] will be **DENIED as MOOT**.

Finally, Petitioner has filed a motion to lift stay [Doc. 11], requesting the Court lift the stay it imposed pending the *Wooden* decision. However, the Court did not actually grant Petitioner's motion to stay. Thus, Petitioner's motion to lift stay [Doc. 11] is moot. Accordingly, Petitioner's motion to lift stay [Doc. 11] will be **DENIED as MOOT**.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 83] will be **DENIED** and **DISMISSED**. Petitioner's liberally construed motion to amend [Doc. 7] will be **GRANTED** to the extent that the Court will consider the information contained therein. Petitioner's motions to stay [Doc. 9] and lift stay [Doc. 11] will be **DENIED as MOOT**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

    **IT IS SO ORDERED.**

    ENTER:

    s/ Leon Jordan
    United States District Judge